**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ECLIPSE GAMING SYSTEMS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 17 C 196 |
| | ) | |
| ANTHONY ANTONUCCI | ) | Hon. Virginia M. Kendall |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER AND OPINION**

Plaintiff Eclipse Gaming Systems, LLC ("Eclipse") sued its former employee, founding member, and shareholder, Anthony Antonucci, alleging that he violated two provisions of the Computer Fraud and Abuse Act ("CFAA") and also asserted various state and common law claims, after Antonucci installed a software "time bomb" on Plaintiff's gaming machines and demanded payment before overriding it. (Dkt. 1 at 1.) Antonucci moves to dismiss Eclipse's CFAA claims for failure to state a claim pursuant to Rule 12(b)(6). He also argues that the rest of Eclipse's claims should be dismissed because there is no diversity jurisdiction, and without federal question jurisdiction, this Court does not have subject matter jurisdiction. For the reasons stated below, Antonucci's Motion to Dismiss is denied.

**BACKGROUND**

The Court takes the following allegations from the Complaint and treats them as true for the purposes of this motion. *See Gillard v. Proven Methods Seminars, LLC.*, 388 F.App'x 549 (7th Cir 2010). In 2008, Eclipse was formed by Antonucci and several other partners to supply "slot-style games to customers in the casino gaming industry." (Dkt. 1 at 1.) Antonucci's role in the organization, both in his individual capacity as an employee and as the owner of his own

software company, Digital Dynamic Software, Inc. ("Digital"), was to provide security software for the gaming machines. (*Id.* at 2.) These gaming machines require security software to operate. (*Id.*) In order for the software to function, the machines must have external devices known as "dongles" plugged-in, which communicate with the software on the gaming machines. (*Id.*) If the security software on the dongles becomes inoperative, the gaming machine also becomes inoperative. (*Id.*)

Between 2008 and 2014, Digital, Antonucci's company, licensed its gaming security software to Eclipse through an oral agreement. (*Id.* ¶ 17.) In 2015, Digital and Eclipse signed a licensing agreement which granted Eclipse a "limited, nonexclusive license during the term of [the License Agreement] to use, sell, import, export, distribute, transmit, reproduce and publicly display copies of [Digital's software] as electronic files . . ." (Dkt. 1, Ex. A at 2.) In exchange for this license, Eclipse paid Digital a one-time "run-time" license fee of $100 for each gaming machine, plus a quarterly maintenance fee of $5,000 for all the machines. (Dkt. 1 at 3.)

In the spring of 2016, Antonucci contacted other shareholders of Eclipse to request a buy-out of his membership interest in Eclipse. (*Id.*) When the other shareholders rejected his offer, Digital filed suit in Cook County Circuit Court seeking a declaratory judgment that the licensing agreement between Digital and Eclipse was null and void. (*Id.* ¶ 32.) At the same time, Antonucci allegedly installed a software "time bomb" on the gaming machines, which would render the gaming machines inoperable on a certain date. (*Id.* ¶ 33.)

Without knowledge of the time bomb, Eclipse terminated Antonucci's employment on August 25, 2016. (*Id.* ¶ 36.) Shortly thereafter, Eclipse discovered the time bomb in the software, but did not know how to eliminate it. (*Id.* ¶ 37.) On November 18, 2016, Antonucci's counsel sent a letter to Eclipse demanding $300,000 or else Eclipse's gaming machines would become

inoperable beginning in the first week of December. (*Id.* ¶ 38.) Eclipse's counsel repeatedly sought confirmation that the machines would not be rendered inoperable, but never received such confirmation. (*Id.* ¶¶ 39–40.) As a result, Eclipse filed suit in Cook County Circuit Court on November 30, 2016 (Dkt. 22, Ex. B), seeking declaratory judgment that the licensing agreement was not null and void and a preliminary and permanent injunction against Antonucci to stop the shutdown. (*Id.* ¶ 23.) Eclipse further sought specific performance of the agreement between Eclipse and Digital that required Digital to deliver necessary software updates without rendering the machines inoperable. (*Id.* ¶ 30). Meanwhile, Eclipse received another phone call from Antonucci's counsel informing Eclipse that its machines would shut down the following week if Antonucci did not receive the requested $300,000. (Dkt. 1 ¶ 42.)

Under the threat of imminent shutdown, Eclipse's counsel obtained an *ex parte* temporary restraining order against Digital to prevent the shutdown. (*Id.* ¶ 43.) On December 5, 2016, the state court heard Eclipse's motion for a temporary restraining order, which it granted. (*Id.* ¶ 45.) During a recess, Eclipse learned that: 1) Antonucci had made two recent software updates, both of which included the time bomb, which was set to render the machines inoperable in a few days; 2) a special dongle was required to override the shutdown on each machine; and 3) Antonucci had 2,000 of the required dongles with him. (*Id.* ¶ 46.) At the time, Eclipse believed that approximately 500 gaming machines had the time bomb installed, so Eclipse would need to acquire 500 dongles in order to avoid the shutdown. (*Id.* ¶ 47.)

After a recess during the hearing, Eclipse agreed to pay Digital $50,000 for outstanding fees under their software licensing agreement, as well as $15,000 for 500 of the dongles that Antonucci had in his possession. (*Id.* ¶ 48.) Upon receipt of the dongles, Eclipse implemented emergency procedures to avoid the shutdown, including performing tests, warning clients of the

possibility of shutdown, sending technicians to casino locations across the country, and deploying personnel at client locations to monitor the machines' performance. (*Id.* ¶ 49.) Despite these emergency procedures, some of Eclipse's machines shut down for approximately seven days as a result of Defendant's software time bomb. (*Id.* ¶ 50.) This suit followed shortly thereafter.

## LEGAL STANDARD

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), this Court construes all facts in the light most favorable to the non-moving party. *See Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012). The Court also takes all well-pleaded factual allegations as true. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). This Court dismisses claims only if the plaintiffs would not be entitled to relief under any set of facts that could be proven consistent with the allegations. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007). If at any time during the course of litigation this Court lacks subject matter jurisdiction, it must dismiss the case pursuant to Rule 12(b)(1). *Douglas v. Ducomb Ctr.*, 28 Fed. App'x 562 (7th Cir. 2002).

## DISCUSSION

Defendant claims that Plaintiff's allegations are insufficient to state a claim under two provisions of the CFAA, specifically 18 U.S.C. § 1030(a)(5)(A) and § 1030(a)(7), because Plaintiff fails to allege that: 1) the gaming machines are "protected computers" used in interstate commerce as required by the CFAA and 2) he has incurred the minimum damages of $5,000 required by the CFAA.

a. *Protected Computer*

Section 1030(a)(5)(A) of the CFAA prohibits one from knowingly causing the "transmission of a program, information, code, or command, and as a result of such conduct, intentionally caus[ing] damage without authorization, to *a protected computer*." (emphasis added). In relevant part, § 1030(a)(7) prohibits one from, transmitting in interstate commerce, with the intent to extort money or a thing of value, (A) any threat to cause damage to a protected computer, or (C) any demand or request for money or a thing of value in relation to a protected computer. Under the statute, a protected computer is a computer that is "used in or affecting interstate . . . commerce or communication." § 1030(e)(2)(B).

Alleging that a computer is a protected one is "not difficult." *Patrick Patterson Custom Homes, Inc. v. Bach*, 586 F.Supp.2d 1026, 1032 (N.D. Ill. 2008). Although the statute does not define the term "computer," the term is commonly understood to be "a programmable, usually electronic, device that can store, retrieve, and process data." Merriam-Webster's Online Dictionary, merriam-webster.com/dictionary/computer (last visited June 15, 2017). Eclipse alleges that its "gaming machines were protected computers within the meaning of . . . § 1030(e)(2)" and alleges that these machines ran software. (Dkt. 1 at 2, ¶¶ 11, 15, 20, 73.) Plaintiff has sufficiently alleged that the gaming machines are computers because they are electronic devices that store, retrieve, and process data.

To establish that the computer is used in interstate commerce, "it suffices to state the computer was used for business and the business operated in two different states." *Patrick Patterson Custom Homes*, 586 F.Supp.2d at 1032. Antonucci cites *Patrick Patterson Custom Homes* in support of his Motion to Dismiss, asserting that the "District Court found plaintiffs failed to state a claim under the CFAA because their mere allegation that the computer was a

"protected computer" under the statute was pure speculation as the complaint alleged no factual allegation that supported that the computer was used in interstate commerce." (Dkt. 15 at 6.) Antonucci, however, misreads or misstates the court's holding in *Patterson Homes*. There, the Court found plaintiff's allegations regarding the use of a protected computer to be sufficient under the CFAA because the plaintiff alleged that the computer at issue conducted business across state lines and used the internet. *Patrick Patterson Custom Homes, Inc.*, 586 F. Supp. 2d at 1033. Plaintiff alleges that the machines were used in at least five states, could be accessed remotely, and that Defendant, with the intent to extort money from Plaintiff, sent messages in interstate commerce to Plaintiff's counsel threatening to damage the gaming machines. (*Id.* ¶¶ 72-79, 82.) These are sufficient allegations to state a claim under the CFAA. *See, e.g., Modis, Inc. v. Bardelli*, 531 F.Supp.2d 314 (D. Conn. 2008) (holding that allegations that the plaintiff had office locations in two states both of which had computers used in interstate communication was sufficient to establish the "protected computer" requirement of the CFAA.)

      *b. Statutory Damages*

In order to successfully allege damages above the CFAA's statutory minimum of $5,000, a plaintiff must give an explanation of his damages that rises above "the speculative level." *Modrowski v. Pigatto*, 2010 WL 2610656, at *2 (N.D. Ill. 2010) (dismissing CFAA claim because plaintiff failed to allege how defendant's conduct caused plaintiff to suffer more than $5,000 in damages). Unlike the plaintiff in *Modrowski*, Eclipse plausibly alleges at least $5,000 in damages resulting from the time bomb installed on the machines. (Dkt. 1 ¶ 48.) Specifically, it alleges that as a result of the time bomb, it spent $15,000 on the dongles alone, plus additional expenses implementing the emergency procedures and seeking and obtaining a restraining order, and it suffered damages as a result of the shutdown of some of its machines. (*Id.* ¶¶ 51, 78-79.)

Plaintiffs have thus stated claims for relief under CFAA § 1030(a)(5)(A) and § 1030(a)(7) that rise above the speculative level. *See Motorola, Inc. v. Lemko Corp.*, 609 F.Supp.2d 760, 768 (N.D. Ill. 2009) (holding that a complaint that alleged over $5,000 in damages during a one year period due to unauthorized access to confidential information on protected computers is sufficient to state a claim under the CFAA); *Patrick Patterson Homes, Inc.*, 586 F.Supp.2d at 1036–37 (holding that a complaint that alleges damages over $5,000 related to costs of responding to defendant's misuse of a protected computer is sufficient to state a claim under the CFAA).

### c. Subject Matter Jurisdiction

Antonucci also argues that because there is no federal question jurisdiction, the Court lacks jurisdiction over Eclipse's seven state and common law claims[1] because, as Eclipse concedes (Dkt. 22), the parties are not diverse. However, because this Court has federal question jurisdiction over the CFAA counts, the Court retains supplemental jurisdiction over Eclipse's state law claims because those claims all arise out of the "same transaction or occurrence." 28 U.S.C. § 1367(a). *See Groce v. Eli Lilly & Co.*, 193 F.3d 496 (7th Cir. 1999).

### d. Abstention

Given the above-discussed pending action in Cook County Circuit Court pertaining to the parties' software licensing agreement, the Court asked the parties on May 16, 2017, to address whether it should abstain from exercising jurisdiction over the instant action. The Court sought to verify that allowing the instant action to go forward would not lead to duplicative litigation and the inefficient use of scarce judicial resources. Plaintiff's reply brief to Defendant's Motion

---

[1] The state law claims brought in this Court are: 1) violation of the Illinois Computer Crime Prevention Law, 720 ILCS § 5/17-51; 2) tortious interference with contractual relations under Illinois common law; 3) breach of fiduciary duty as an employee under Illinois common law; 4) breach of fiduciary duty as an employee under Georgia common law; 5) breach of employment agreement under Georgia common law; 6) breach of fiduciary duty as a member of an LLC under Texas common law; 7) conversion under Illinois common law.

to Dismiss addresses this issue, whereas Defendant did not seek leave to submit any briefing to the Court on this question.

This Court adheres to the *Colorado River* doctrine in determining whether to exercise jurisdiction over a case for which there is a pending state court action. *SKS & Assocs., Inc.*, 619 F.3d 674, 677 (7th Cir 2010); *Selmon v. Portsmouth Drive Condominium Ass'n*, 89 F.3d 406, 408-09 (7th Cir. 1996). As such, the Court begins with the assumption that it will exercise jurisdiction where it exists and notes that Defendant has the burden of overcoming this Court's presumption against abstention. *See AXA Corp. Sols. v. Underwriters Reinsurance*, 347 F.3d 272, 278 (7th Cir. 2003). "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *SKS & Assocs.*, 619 F.3d at 677 (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). However, this Court may nonetheless abstain from exercising jurisdiction in order to conserve limited federal judicial resources after assessing some of the following exceptional circumstances: 1) difficulties that would arise from state and federal courts assuming jurisdiction over the same matter, 2) the relative inconvenience to the parties of the federal forum, 3) the desirability of avoiding piecemeal litigation, and 4) the order in which the state and federal proceedings were filed. *Sverdrup Corp. v. Edwardsville Cmty. Unit Sch. Dist.*, 125 F.3d 546, 549 (7th Cir. 1997) (citing *Colorado River*, 424 U.S. at 818). Thus, while the Court must promote "wise judicial administration," mere judicial diseconomy is insufficient to justify the Court in refusing to exercise jurisdiction. *Colorado River*, 424 U.S. at 818.

The state court action involves Digital's claims regarding the validity of the licensing agreement and Eclipse's counterclaims for: 1) declaratory relief that the software licensing agreement is valid; 2) that Digital committed anticipatory breach of the licensing agreement by threatening software disruption in the form of the time bomb; and 3) a remedy of specific

performance, which would require Digital to stop the time bomb from taking effect. (Dkt. 22-2 at 4–6.)

With respect to the first *Colorado River* factor, Plaintiff asserts that the state matter is not "parallel" to this action, and as a result, no difficulties would arise from the state and federal courts' simultaneous exercise of jurisdiction. (Dkt. 22 at 5.) The Court may abstain from hearing a suit for which there is a "parallel" action pending in state court. *Day v. Union Mines, Inc.*, 862 F.2d 652, 658 (7th Cir. 1988); *Mitsui Taiyo Kobe Bank, Ltd. v. First Nat'l Realty, Ltd.*, 788 F.Supp. 1007 (N.D. Ill. 1992). Suits are parallel when "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1559 (7th Cir. 1989) (quoting *Calvert Fire Ins. Co. v. American Mut. Reinsurance Co.*, 600 F. 2d 1228, 1229 n. 1 (7th Cir. 1979)).

Although the parties are substantially the same in both actions, the claims being litigated in state court are not parallel to the claims brought in this Court. The claims brought by Digital in state court concern Eclipse's compliance with the terms of the software licensing agreement, claims which are not asserted in this case. Although some of Eclipse's counterclaims in the state court action concern the time bomb, they are not substantially the same claims as asserted in this matter for two reasons. First, Eclipse's claims in state court are for declaratory and injunctive relief to stop Digital from allowing the time bomb to go into effect. (Dkt. 22 at 4.) In this action, by contrast, Eclipse seeks money damages resulting from the installation of the time bomb. Second, to the extent Eclipse's claims in state court specifically concern the time bomb, they do so in relation to how the time bomb violated the software licensing agreement (Dkt. 22 at 3–4), which is not a claim brought in this Court. In fact, the claims brought in state court would provide no remedy for damages caused by the time bomb, which is the focal point of the instant

matter. The state and federal cases have a different temporal scope and seek different relief. Thus, the cases are not parallel for the purposes of a *Colorado River* analysis.

The second *Colorado River* factor, whether the state or federal forum is more convenient for the parties, is not a factor in this case. Both courts are located in Chicago and are convenient to the parties.

The third factor, the desirability of avoiding piecemeal litigation, is a concern when "different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Day*, 862 F.2d at 659 (quoting *Am. Int'l Underwriters, Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988)). This factor requires that courts avoid duplicative discovery whenever possible. *See Day*, 862 F.2d 652 (holding that the federal district court should have abstained from exercising jurisdiction given that both courts needed to oversee substantially similar discovery). This concern is not a significant issue in the instant case given the different evidence that the parties would need to produce in this case to prove their claims in each court. Discovery in the state action would focus on the rights and obligations created in the parties by the software licensing agreement, and to what extent either party was in violation of the agreement, mostly prior to the installation of the time bomb. Discovery for purposes of the claims brought in this Court will primarily focus on the time bomb and the extent of Eclipse's damages resulting from it. Accordingly, the third *Colorado River* factor is not a concern in this litigation.

The final factor, the order in which the cases were filed, weighs in favor of abstention, but is insufficient by itself to impel the Court to abstain. Because "[n]o one factor is necessarily determinative," only the "clearest of justifications will warrant dismissal." *Lumen Const., Inc. v. Brant Const. Co., Inc.*, 780 F.2d 691, 694 (7th Cir.) (quoting *Colorado River*, 424 U.S. at 818–

19). Given that 1) the claims brought in each court are not parallel, 2) convenience to the parties is not an issue, and 3) the courts' exercise of concurrent jurisdiction will not result in piecemeal litigation, the mere fact that this Court is the second court to hear a case involving the same parties is insufficient to justify this Court's abstention.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court does not abstain from exercising jurisdiction, and Defendant's Motion to Dismiss is denied.

Hon. Virginia M. Kendall
United States District Judge

Date: July 18, 2017